ELEVENTH CIRCUIT DOCKET NO. 14-15319-B

IN THE UNITED STATES CIRCUIT COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

JASON M. GOLUB, ET AL.,

Defendant/Appellant,

vs.

JOHNNY L. CLARIDY and JANIE H. CLARIDY,

Plaintiffs/Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
CIVIL ACTION NO. 3:13-CV-558-BJD-PDB

REPLY BRIEF OF APPELLANT JASON M. GOLUB

Gregory F. Lunny (FL Bar No. 883654)
Cristine M. Russell (FL Bar No. 0157406)
Rogers Towers, P.A.,
1301 Riverplace Boulevard, Suite 1500
Jacksonville, Florida 32207-1811
Telephone: (904) 398-3911
Facsimile: (904) 396-0663

Attorneys for Appellant Jason M. Golub

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 16.1-1, the undersigned certify that, the best of their information and belief, the following is a complete list of all interested persons, including the following trial judge(s), attorneys, persons, association of persons, firms, partnerships, or corporations, that meet the criteria stated in Eleventh Circuit Rule 26.1-1:

**Barksdale, The Honorable Patricia,** United States Magistrate Judge

**Claridy, Janie H.,** Plaintiff/Appellee

**Claridy, Johnny L.,** Plaintiff/Appellee

**Corrigan, The Honorable Timothy J.,** United States District Judge

**Davis, The Honorable Brian J.,** United States District Judge

**Erdelyi, Esq., Susan,** Counsel for The City of Lake City (Co-Defendant in lower court case)

**Estell, Jr., Esq., Reginald**, Counsel for Johnny L. Claridy and Janie H. Claridy (Plaintiffs/Appellees)

**Golub, Jason,** Defendant/Appellant

**Hedrick, Esq., Timothy D.,** Counsel for Jason M. Golub (Defendant/ Appellant)

**Logan, Esq., Meagan Lindsey,** Counsel for The City of Lake City (Co-Defendant in the lower court case)

**Lunny, Esq., Gregory F.,** Counsel for Jason M. Golub (Defendant/ Appellant)

**Marks Gray, P.A.,** Counsel for The City of Lake City (Co-Defendant in the lower court case)

**Rogers Towers, P.A.,** Counsel for Jason M. Golub (Defendant/Appellant)

**Russell, Esq., Cristine M.,** Counsel for Jason M. Golub (Defendant/ Appellant)

**Slama, Esq., Robert J.,** Counsel for Johnny L. Claridy and Janie H. Claridy (Plaintiffs/Appellees)

**The City of Lake City,** Co-Defendant in lower court case

**The Law Offices of Reginald Estell Jr., P.A.,** Counsel for Johnny L. Claridy and Janie H. Claridy (Plaintiffs/Appellees)

## **TABLE OF CONTENTS**

Page

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE

DISCLOSURE STATEMENT.............................................................................C- 1 -2

TABLE OF CONTENTS .................................................................................... i

TABLE OF CITATIONS .................................................................................iii

ARGUMENT ....................................................................................................... 1

I.    OFFICER GOLUB IS ENTITLED TO QUALIFIED IMMUNITY AS
A MATTER OF LAW IN CONNECTION WITH THE SECOND
TASING OF MR. CLARIDY............................................................................ 1

    A.  Appellees have Set Forth an Incorrect Legal Standard. ............................... 1

    B.  Appellees Rely Upon Inapplicable Case Law. ............................................. 7

    C.  Appellees Have Misapprehended the Record and Have Also
Improperly Included a Reference to an Unsworn Witness
Statement Stricken By the District Court. ..................................................... 9

II.   APPELLEES HAVE IMPROPERLY RAISED THE ISSUE OF
      TOTAL DAMAGES PREMATURELY AS THE ISSUE IS NOT
      SUBJECT TO INTERLOCUTORY APPEAL AND WAS NOT
      RAISED BY APPELLANT IN THE PRINCIPAL BRIEF OR
      NOTICE OF APPEAL. ................................................................................... 14

III.  OFFICER GOLUB IS ENTITLED TO STATUTORY IMMUNITY
      PURSUANT TO FLA. STAT. § 768.28(9)(A). ............................................... 15

CONCLUSION ......................................................................................................... 18

CERTIFICATE OF COMPLIANCE .......................................................................... 19

CERTIFICATE OF SERVICE .................................................................................... 20

ii

# TABLE OF CITATIONS

**CASES:**

Alamo Rent-A-Car v Mancusi, 632 So. 2d 1352 (Fla. 1994) .................................. 16

Anderson v. Russell, 247 F.3d 125 (4th Cir. 2001) ................................................... 5

Buckley v. Haddock, 292 Fed. Appx. 791 (11th Cir. 2008) ..................................... 8

Chaney v. City of Orlando, 291 Fed. Appx. 238 (11th Cir.2008) ........................... 8

Cotrell v. Caldwell, 85 F.3d 1480 (11th Cir. 1996) .................................................. 2

Draper v. Reynolds, 369 F.3d 1270 (11th Cir. 2004) ............................................... 8

Graham v. Connor, 490 U.S. 386, 109 S. Ct. 1865 (1989) ................................... 2, 3

Hadley v. Guitierrez, 526 F.3d 1324 (11th Cir. 2008).......................................... 8, 9

Kingsland v. City of Miami, 382 F. 3d 1220 (11th Cir. 2004) ............................... 15

Lee v. Ferraro, 284 F.3d 1188 (11th Cir. 2002)........................................................ 2

Mejia v. City of New York, 119 F. Supp. 2d 232 (E.D.N.Y. 2000) ....................... 16

Mobley v. Palm Beach County Sheriff Dep't, 783 F.3d 1347

   (11th Cir. 2015) ............................................................................................... 2, 6, 8

Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808 (2009)....................................... 6

Phelan v. City of Cape Coral, 415 So. 2d 1292

(Fla. Dist. Ct. App. 1982)..................................................................... 15

Reese v. Herbert, 527 F.3d 1253 (11th Cir. 2008)............................................. 6, 8, 9

Runge v. Snow, 514 F. App'x 891 (11th Cir. 2013).................................................7

Saucier v. Katz, 533 U.S. 194, 121 S. Ct. 2151 (2001) ............................................ 6

Slicker v. Jackson, 215 F.3d 1225 (11th Cir. 2000)...................................................9

Vinyard v. Wilson, 311 F.3d 1340 (11th Cir. 2002)...................................................9

Zivojinovich v. Barner, 525 F.3d 1059 (11th Cir. 2008) ...........................................5

## STATUTES:

Florida Statutes § 768.28(9)(a)................................................................ii, 15, 17, 18

## RULES:

Federal Rule of Civil Procedure 56......................................................................... 14

## ARGUMENT

### I.  OFFICER GOLUB IS ENTITLED TO QUALIFIED IMMUNITY AS A MATTER OF LAW IN CONNECTION WITH THE SECOND TASING OF MR. CLARIDY.

Appellees contend Mr. Claridy testified that "despite [Claridy] complying with Golub's order and placing his hands behind his back, Officer Golub discharged yet *another* burst of electricity into Mr. Claridy" and that "[c]learly, Mr. Claridy was submitting to Officer Golub's verbal commands and offered neither active nor passive resistance."  Appellees' *Amended* Principal Answer Brief ("AB"), p. 31 of 38 (emphasis in original).[1]  Appellees then argue that "[u]pon these facts, a reasonable jury could conclude that the second tase was completely unnecessary as a means of effectuating Mr. Claridy's arrest.  Because he presented no threat to the officer or those in the vicinity, Claridy had been tased without any constitutional justification for doing so."  AB, p. 32 of 38.  As these statements demonstrate, Appellees have both misunderstood the record and misapprehended the correct legal standard to be applied.

### A.  Appellees have Set Forth an Incorrect Legal Standard.

The appropriate standard for determining whether an officer is entitled to qualified immunity is not, as stated by Appellees, "whether a reasonable jury could

---

[1] Appellees filed the Amended Brief, which was attached to a motion for leave to file, on July 27th.  The Court granted the motion on July 29th.  All references to Appellees Principal Answer Brief are to the amended version attached to the motion.

conclude that the second tase was completely unnecessary as a means of effectuating Mr. Claridy's arrest," (AB, p. 32 of 38) but rather, "whether the force applied 'is objectively reasonable in light of the facts confronting the officer,' a determination made 'from the perspective of a reasonable officer on the scene' and not 'with the 20/20 vision of hindsight.'"  Mobley v. Palm Beach County Sheriff Dep't, 783 F.3d 1347, 1353 (11th Cir. 2015).[2]  In outlining the objective reasonableness standard, this Court, in Mobley, considered a total of six factors from the perspective of a reasonable officer on the scene, the first five of which were:  (1) the severity of the crime; (2) whether the suspect poses an immediate threat to the safety pf the officer or others; (3) whether the suspect is actively resisting or attempting to evade arrest; (4) the need for the application of force; and (5) the relationship between the need and the amount of the force used . . . ."  Mobley, 783 F.3d at 1355 (citing Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872, (1989); Lee v. Ferraro, 284 F.3d 1188, 1198 (11th Cir. 2002).  The sixth factor considered by this Court in Mobley was the extent of the injury inflicted.  Mobley, 783 F.3d at 1355.  A proper *de novo*[3] application of these factors to the facts at issue, even viewing them in the light most favorable to Mr.

---

[2] Moreover, the issue of qualified immunity itself is never submitted to a jury; it is a legal issue to be determined by the Court.  Cotrell v. Caldwell, 85 F.3d 1480, 1488 (11th Cir. 1996).  Jury interrogatories are limited to factual issues underlying the defense and should not mention the term "qualified immunity."  Id.

[3] This Court's review of the trial court's denial of qualified immunity is *de novo.* Mobley, 783 F.3d at 1352.

-2-

Claridy, leads to the inexorable conclusion that Officer Golub is entitled to qualified immunity.

As discussed at length in the Appellant's Principal Initial Brief ("IB", pp. 19-22),[4] the crime at issue, as reasonably perceived by Officer Golub who saw Mr. Claridy reach for the door of his vehicle, was resisting arrest with a deadly weapon, not mere disorderly conduct.[5]    Second, Officer Golub was certainly reasonable in his perception that Claridy still posed an immediate threat to the safety of the other officers and bystanders at the scene.   The trial court did not mention this second factor in its analysis at all.  As Graham v. Connor cautions, the reasonableness test should take into consideration that the officer is making "split-second" judgments "in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." 490 U.S. at 396-97, 109 S. Ct. at 1872.

Even viewing the facts as averred by Mr. Claridy, at the time he was tased for the second time, Mr. Claridy had not yet been placed in handcuffs.  In addition, there were still multiple hostile individuals surrounding Mr. Claridy and Officer

---

[4] Citation is to the original page numbers on the bottom of Appellant's Principal Brief.

[5] The trial court acknowledged that Officer Golub feared that Mr. Claridy was trying to retrieve a firearm from the vehicle but nonetheless concluded that the crime at issue was disorderly conduct (the crime for which Officer Golub initially informed Claridy he was under arrest, prior to the moment when Claridy reached for the door of his vehicle).  See Doc. 59, p. 32.

Golub, and Officer Golub was compelled to draw his firearm and direct at least one individual to stay back while he was still engaged with Mr. Claridy. Doc. 50-4 at 66, ln. 16-p. 67, ln. 12.[6]   There were also a number of bystanders, including children at the scene. Doc. 50-4 at 26, ln. 19-20; Doc 50-3, p. 25, ln. 9-15; p. 26, ln. 13-22.   Given the information that Officer Golub received (that there was a weapon in a vehicle at the Claridy residence), it was certainly reasonable for Officer Golub to believe that Mr. Golub still posed a danger to the safety of the numerous individuals at the scene.   For these same reasons, consideration of the fourth element, the need for the application of force, also weighs in favor of Officer Golub.

Consideration of the third element also weighs in favor of Officer Golub. It was reasonable for Officer Golub to believe that Mr. Claridy was still resisting arrest when he did not obey an order to place his hands behind his back. Regardless of whether Mr. Claridy was "out" or not, it was not unreasonable for Officer Golub to perceive him to be disregarding Officer Golub's orders to place his hands behind his back.  Mr. Claridy had just disregarded Officer Golub's orders and backed away from Officer Golub and to his vehicle near the driver's side rear door handle, where Officer Golub believed a firearm was located.  Johnny Claridy

---

[6] Unless otherwise indicated, page references to deposition transcripts are to the original page numbers of the transcript (and not the number shown by the Court's CM/ECF System).  The original page numbers shown on the upper right of the transcript have been utilized for clarity.

Depo., Doc. 50-1 at p. 34, ln. 2-14; Doc. 50-2 at p. 143, ln. 20-22. Both his wife and his sister were trying to make sure things stayed "calm." Janie Claridy Depo., Doc. 50-3 at p. 20, ln. 5-11 and p. 53, ln 3-9. The situation was tense and rapidly escalating, with another police officer running after another suspect and multiple individuals surrounding Officer Golub. Johnny Claridy Depo., Doc. 50-1, p. 33, ln. 6-10; Golub Depo., Doc. 50-4 at p. 66, ln. 16-p. 67, ln. 12; Doc. 39-7, pp. 18-19 of 24. Taking into account all of the facts confronting Officer Golub, it was not unreasonable for him to believe that Mr. Claridy was continuing to disregard his orders when Mr. Claridy failed to comply with Officer Golub's order to place his hands behind his back.

Although the trial court was required to view the facts in the light most favorable to the non-movant, it was also required to view those facts, and how the circumstances would appear, from the perspective of a reasonable officer. See, e.g., Zivojinovich v. Barner, 525 F.3d 1059, 1073 (11th Cir. 2008) (noting a disagreement between officer and suspect as to whether suspect's actions of spraying blood on officer was intentional but noting, "we must treat it as though it were [intentional] because that is how it would appear to a reasonable officer at the scene.") See also Anderson v. Russell, 247 F.3d 125, 130 (4th Cir. 2001) (minor discrepancies in testimony as to precise positioning of suspect's hands did not create an issue of material fact, noting witness perceptions will often differ in a

"rapidly evolving scenario."). Moreover, even if Officer Golub was mistaken about Mr. Claridy's ability to fight back prior to the second tasing, the analysis is no different. "If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back . . . the officer would be justified in using more force than in fact was needed." Saucier v. Katz, 533 U.S. 194, 205, 121 S. Ct. 2151, 2158 (2001), overruled in part on other grounds by Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808 (2009).

The fifth consideration noted by the Court in Mobley, the relationship between the need and amount of force used, also weighs against Mr. Claridy. This Court has cautioned that "[w]hen more force is required to effect an arrest without endangering officer safety, the suspect will likely suffer more severe injury, but that alone does not make the use of that amount of force unreasonable." 783 F.3d at 1355. The "typical arrest involves some force and injury." Id. (citing Reese v. Herbert, 527 F.3d 1253, 1272 (11th Cir. 2008)). Given Officer Golub's reasonable perception that the circumstances were hostile (due among other things to the number of individuals still in the vicinity and the possibility that there was a weapon in a vehicle), he was more than justified in one additional discharge of his taser (which, as the trial court acknowledged, is a non-deadly weapon). Doc. 59, p. 32, n. 19.

Finally, with respect to Mr. Claridy's alleged injury, the only expert evidence in the record as to the medical significance of Mr. Claridy's injury is that he suffered a bruise to his knee.  Doc. 39-8, p. 2, ¶ 6.[7]  Given Officer Golub's reasonable perception that a deadly weapon was present at the scene, the injury suffered in relation to those concerns was certainly not disproportionate.

### B.   Appellees Rely Upon Inapplicable Case Law.

Appellees improperly attempt to rely upon this Court's decisions holding that "'the gratuitous use of force when a criminal suspect is restrained and not resisting arrest constitutes excessive force.'"  AB, pp. 31, 32 of 38 (citing Runge v. Snow, 514 F. App'x 891, 895 (11th Cir. 2013)).  It is undisputed that Claridy was tased both times prior to the time he was placed in handcuffs.  Even assuming the truth of Claridy's assertion that he was on the ground (and not still on his feet coming toward Officer Golub again), Officer Golub reasonably perceived him to be disregarding an order to place his hands behind his back.   Mr. Claridy acknowledged that he was uncertain as to whether Officer Golub gave him any further commands.  Doc. 50-1, p. 39, ln. 25-p. 40, ln. 10.

This Court has been cautious in its evaluation of the point at which a suspect no longer poses danger.   The Court has recently acknowledged that "[o]ur decisions demonstrate that the point at which a suspect is handcuffed and 'pose[s]

---

[7] Plaintiffs did not disclose any expert witnesses during the discovery phase.

no risk of danger to the officer' is often the pivotal point for excessive-force claims." Mobley, 783 F.3d at 1356. The Court has also held that the use of a taser to encourage compliance is permissible. See, e.g., Draper v. Reynolds, 369 F.3d 1270, 1278 (11th Cir. 2004). Thus, even assuming Mr. Claridy's version, that he was face down on the ground and possibly unconscious, it was still reasonable to utilize a taser to gain compliance, particularly where the officer reasonably perceives the suspect to be ignoring his directions. See Chaney v. City of Orlando, 291 Fed. Appx. 238, 244 (11th Cir.2008) (concluding that the officer was permitted to utilize his taser to gain compliance); Buckley v. Haddock, 292 Fed. Appx. 791, 798-99 (11th Cir. 2008) (objectively reasonable officer might conclude that additional use of taser was necessary to secure non-complaint Plaintiff). Accordingly, Officer Golub's second use of the taser was not gratuitous.

The circumstances at issue in the additional case law cited by Appellees stand in sharp contrast to those present here. In Reese v. Herbert, 527 F.3d 1253, 1273-1274 (11th Cir. 2008), a suspect was grabbed, kicked, placed in a chokehold and thrown the ground after he declined to leave the general area of the scene of a crime. He was kicked and beaten while on the ground, and after his left hand was placed in handcuffs, he was pepper sprayed in the face. Id. at 1273. The suspect never attempted to escape or resist; nor were any weapons involved. Id. In Hadley v. Guitierrez, 526 F.3d 1324 (11th Cir. 2008), an officer punched a suspect in the

stomach while he was handcuffed and not resisting arrest. Id. at 1330. Similarly, in Slicker v. Jackson, 215 F.3d 1225, 1233 (11th Cir. 2000), the officer slammed the head of an individual into the pavement, kicked him in the leg, head and neck after he had been handcuffed, and was not attempting to flee. In Vinyard v. Wilson, 311 F.3d 1340, 1343 (11th Cir. 2002), an officer sprayed an individual in the face with pepper spray multiple times after she was already restrained.

Reese, Hadley, Slicker and Vinyard all involve facts that are in clearly and markedly distinct from those in the case at hand, where Officer Golub exercised remarkable restraint in circumstances where he was outnumbered and reasonably believed that there may be a weapon present at the scene. Rather than resort to deadly force, Officer Golub utilized a non-deadly weapon two times on a suspect who was indisputably resisting arrest, until he was certain that Mr. Claridy was restrained. Accordingly, Officer Golub's conduct more than meets the objective reasonableness test, and the trial court erred in denying qualified immunity.

### C. Appellees Have Misapprehended the Record and Have Also Improperly Included a Reference to an Unsworn Witness Statement Stricken By the District Court.

In support of their statement that Mr. Claridy already had his hands behind his back when he was tased for a second time, Appellees cite solely to pages 39, ln. 25 through page 40, ln. 5 of Mr. Claridy's deposition. (Doc. 50-1). A complete reading of Mr. Claridy's deposition transcript, however, reveals that Mr. Claridy

testified that upon being tased the first time, he fell forward (Doc. 50-1, pp. 38, ln. 17- p. 39, ln. 2), and lay on the ground on his stomach. Id. at p. 164, ln. 12-16. According to Plaintiff Jane Claridy, Officer Golub then instructed Mr. Claridy to put his hands behind his back. Janie Claridy Depo., Doc. 50-3 at p. 30, ln. 20-23. According to Mr. Claridy, however, he did not hear any further commands because he was "out." Doc. 50-1, p. 39, ln. 25-p. 40, ln. 10. While Mr. Claridy's own testimony at first suggests that he was tased for the second time *after* his hands were behind his back, he then clarifies that the second tasing occurred before he placed his hands behind his back:

> A:   When I came through, I remember him saying, "Put your hands behind your back."
>
> Q:   Did you do that?
>
> A:   Yes.
>
> Q:   And after you put your hand behind your back, what happened?
>
> A:   I was out of it pretty much.
>
> Q:   And at some point you were tased again?
>
> A:   I was tased -- that's the second time I was tased after I had -- I had my hands back, he tased me again. And when I came through that second time, that's when he told me to put my hands behind my back.
>
> Q:   Okay. And my question is, between the first time that -- or strike that.
> After you were tased the first time, did Officer Golub give you any commands?

A:    I don't know.  I was out.

Claridy Depo., Doc. 50-1 at p. 39, ln. 18-p. 40, ln. 10.

      * * *

Q:    And between the first time and the second time, were you given any commands?

A:    While I was on the ground.

Q:    Yes.

A:    **After I came through the second time, he told me to put my hands behind my back.**

Q:    But that's after the second time?

A:    That's after the second time.

Claridy Depo., Doc. 50-1 at p. 40, ln. 24-p. 41, ln. 6 (emphasis added).  He was

then handcuffed by Officer Golub (after the second tasing).  Id., Doc. 50-1 at p. 43,

ln. 2-7.  Thus, even viewing the facts most favorably to Mr. Claridy,[8] and as stated

by Mr. Claridy in his deposition, at the time he was tased a second time, he had not

---

[8] Officer Golub's version is substantially different, as to whether Mr. Claridy was on the ground at all, and he testified that, Mr. Claridy recovered from the second tasing, and came toward him again.  Golub Depo., Doc. 50-4 at p. 31, ln. 18-20; p. 32, ln. 1-7; p. 35, ln. 12-15.  Officer Golub then deployed his taser for the second time.  Doc. 39-7, p. 7 of 24; Golub Depo., Doc. 50-4 at p. 31, ln. 16-22.  However, even viewing the facts as stated by Plaintiff in his deposition, Mr. Claridy was tased for the second time before he was in handcuffs, and it is undisputed that Officer Golub did not believe him to be under control when he used his taser for the second time.

been placed in handcuffs and did not know whether Officer Golub gave further commands to place his hands behind his back.

Appellees also include a section in their Statement of Facts regarding Officer Golub's alleged "conflicting testimony." AB, p. 25 of 38. Appellees are correct that Officer Golub was required to give sworn statements or testimony on four separate occasions: (1) as part of an arrest affidavit in 2009 (Doc. 39-7, pp. 5-7 (Ex. A to Declaration)); (2) as part of a deposition taken in the criminal proceedings in 2010 (Doc. 51-1);[9] (3) as part of a deposition taken in 2014 in Mr. Claridy's civil case brought nearly four years after the incident (Doc. 50-4); and (4) as part of a limited declaration filed in support of Officer Golub's motion for summary judgment in 2014 (Doc. 39-7, pp. 1-4). Although Appellees point out certain alleged inconsistencies, they fail to explain how any of them are material to Officer Golub's qualified immunity defense, and in fact, they are not.

Appellees contend that Officer Golub initially testified that he attempted to take Mr. Claridy's arm to arrest him prior to tasing him (AB, pp. 27-28 of 38), but later stated in the same deposition that he was 3-4 feet away from Claridy when he tased him the first time. AB, p. 27-28 of 38. Appellees further contend that Officer Golub's 2014 Declaration incorrectly states that he had no input into the decision of whether to prosecute Mr. Claridy but had earlier testified that he had

---

[9] Officer Golub's 2010 Deposition (Doc. 51-1) was filed as part of Appellees' Supplemental Appendix, Vol. 2, which was filed with this Court on July 27, 2015.

acquiesced to the state attorney's request to reduce the charges.  AB, pp. 28-29 of 38.  Neither point is a material discrepancy.

Officer Golub consistently describes Mr. Claridy shoving him, and that Mr. Claridy then turned toward his vehicle and placed his hands near the rear door before he was tased the first time.  Doc. 39-7, p. 7 of 24; Doc. 51-1, p. 26 of 43, ln. 15-20; Doc. 50-4, p. 32 of 75, ln. 10-25.  Whether Officer Golub correctly recalled that he first attempted to apprehend Mr. Claridy by grabbing his arm is not material because Officer Golub reasonably perceived that Mr. Claridy had turned toward his vehicle and had placed his hands on or near the passenger door before he was tased.  It is also undisputed that Officer Golub received a call that there may be a gun at the scene.  Doc. 50-4, p. 24, ln. 7-16, p. 25, ln. 6-11.  Moreover, these facts all relate to the moments immediately preceding the <u>first</u> tasing for which the trial court correctly determined Office Golub is entitled to qualified immunity.

In addition, the Appellees improperly attempt to rely upon Ronald King's 2013 unsworn "statement" (<u>See</u> AB, p. 26 of 38) to create an issue of material fact as to how many individuals were near Officer Golub.  The document purported to be a transcript of a tape recorded conversation between Mr. King and Plaintiff's counsel taken in 2013.  The document was unsigned and unsworn, and was therefore stricken by the District Court.  <u>See</u> Order dated October 24, 2014, Appellant's Supplemental Appendix, Doc. 48, pp. 3-4 (determining that the

-13-

transcript was not signed, dated or made under penalty of perjury and could not be submitted as summary judgment evidence under Federal Rule of Civil Procedure 56).

Finally, even assuming that Officer Golub did not properly recall, in his 2014 Declaration, that someone from the state attorney office contacted him in 2009 regarding *reducing* the original two charges set forth in the arrest affidavit (Doc. 51-1, p. 34 of 43, ln. 14-22), such a discrepancy is immaterial. Officer Golub never testified that he protested the <u>reduction</u> of the charges or that he encouraged the state attorney's office to prosecute at all, noting that "I submitted the paperwork. It's up to the state attorney's office what they do." Doc. 50-4, p. 53. Moreover, the state attorney's office later modified (by enhancement) the charges again, without Officer Golub's input. Doc. 39-7, p. 2, ¶ 10-11; Doc. 43-1, pp. 3-5; Doc. 50-4, p. 52, ln. 17-p. 53, ln. 4.

## II.    APPELLEES HAVE IMPROPERLY RAISED THE ISSUE OF TOTAL DAMAGES PREMATURELY AS THE ISSUE IS NOT SUBJECT TO INTERLOCUTORY APPEAL AND WAS NOT RAISED BY APPELLANT IN THE PRINCIPAL BRIEF OR NOTICE OF APPEAL.

Although Officer Golub maintains the trial court erred when it denied his motion for partial summary judgment with respect to Mr. Claridy's alleged psychological injuries (Doc. 59. pp. 46-47), this issue is not appealable *at this time* pursuant to the collateral order doctrine, and was therefore not part of Appellant's

interlocutory appeal. It was not included in Appellant's Principal Brief; nor was it included in the Appellant's original or amended notices of appeal.

## III.    OFFICER GOLUB IS ENTITLED TO STATUTORY IMMUNITY PURSUANT TO FLA. STAT. § 768.28(9)(a).

Appellees state that where a defendant acts with sufficient legal malice to fulfill the elements of a malicious prosecution claim, then he also acts with sufficient malice to fall outside the protection afforded by Fla. Stat. § 768.28(9)(a). AB, p. 35 of 38.    Appellees contend that the trial court therefore correctly determined that there was a factual issue as to "statutory malice." AB, p. 36 of 38. As set forth in Appellant's Principal Brief, however, the District Court incorrectly inferred legal malice on the part of Officer Golub solely based upon its conclusion that there were disputed facts between the testimony of Officer Golub and Mr. Claridy concerning the existence of probable cause for the arrest. IB, p. 52 (citing Order, Doc. 59, p. 24).

The determinative factor for a malicious prosecution claim under Florida law is whether the judicial proceeding was brought without any probable cause. Phelan v. City of Cape Coral, 415 So. 2d 1292, 1294 (Fla. Dist. Ct. App. 1982). In this warrantless arrest case, the judicial proceeding did not begin until Mr. Claridy was indicted by the state attorney's office. Kingsland v. City of Miami, 382 F. 3d 1220, 1235 (11th Cir. 2004). The existence of probable cause is measured at the

time the judicial proceeding is commenced and "not at the time of the preceding warrantless arrest." Mejia v. City of New York, 119 F. Supp. 2d 232, 254 (E.D.N.Y. 2000).

There was information provided to the state attorney's office independent of Officer Golub's report, including the reports of multiple other officers, which provided the prosecutor with ample probable cause to commence the judicial proceeding against Mr. Claridy. Doc. 39-7, pp. 12-17 of 24. The reports of Officers Miles, Russell and Brownfield make it impossible for Mr. Claridy to prove a critical element of his malicious prosecution claim: the absence of probable cause for the commencement of the judicial proceeding. See Alamo Rent-A-Car v Mancusi, 632 So. 2d 1352, 1355 (Fla. 1994) (setting forth elements of malice prosecution).

In addition, as previously noted, the discrepancy noted by Appellees (and by the District Court) with respect to Officer Golub's 2014 Declaration is not material. The only input by Officer Golub into the charges against Mr. Claridy (as reflected in his 2010 deposition in the underlying criminal case) was that the state attorney asked him if he would agree to a reduction of the charges against Mr. Claridy. Golub Depo., Doc. 51-1, p. 34 of 43, ln. 14-22 (Appellees' Supplemental

Appendix).[10]    The state attorney reduced the charges and then subsequently

increased them again. Compare Warrant, Doc. 39-7, p. 21 and Information, Doc.

43-1, pp. 3-5 (Appellees' Supplemental Appendix).    Subsequent to the state

attorney's initial discussion with Officer Golub regarding reducing the charge,

Officer Golub had no further input into the state attorney's decisions as to the

charges or prosecuting Mr. Claridy. Doc. 51-1, p. 34 of 43; Doc. 39-7, p. 2, ¶¶ 10

& 11; Doc. 50-4, p. 53, ln. 17-p. 54, ln. 9. Accordingly, the trial court erred when

it held that Officer Golub was not entitled to statutory immunity under §

768.28(9)(a), Florida Statutes.

---

[10] This same reference to Officer Golub's communications with the State
Attorney's office is referenced on page 8 of Appellant's Principal Brief; however,
there, the 2010 deposition in the underlying criminal matter is improperly
referenced as "Doc. **50-4**, p. 34." Doc. 50-4 is Officer Golub's 2014 deposition
taken in this current civil matter.

## CONCLUSION

For the foregoing reasons, Appellant Officer Jason Golub respectfully requests that the Court reverse the order of the District Court to the extent it denied summary judgment in favor of Officer Golub on the basis of qualified immunity and individual statutory immunity under Florida Statute 768.28(9)(a), and that the Court direct the entry of judgment in favor of Officer Golub on Counts I, III, and IV of the Amended Complaint.


Respectfully submitted, this the 30th day of July, 2015.

**ROGERS TOWERS, P.A.**

By:    */s/ Cristine M. Russell*
         Gregory F. Lunny
         Florida Bar No. 883654
         Cristine M. Russell
         Florida Bar No. 0157406
         1301 Riverplace Blvd., Suite 1500
         Jacksonville, FL  32207
         (904) 398-3911 (telephone)
         (904) 396-0663 (facsimile)
         GLunny@rtlaw.com (email)
         CRussell@rtlaw.com (email)

**ATTORNEYS FOR APPELLANT
JASON M. GOLUB**

-18-

## **CERTIFICATE OF COMPLIANCE**

I HEREBY CERTIFY that the forgoing brief complies with the type and volume limitation specified in Rule 32(a)(7)(B), Federal Rules of Appellate Procedure.  This brief contains 4,367 words, including footnotes.

*/s/ Cristine M. Russell*
Attorney

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 30, 2015, an original and 6 copies of

the Reply Brief of Appellant Jason M. Golub were furnished to the U.S. Court of

Appeals, Eleventh Circuit, 56 Forsyth Street, N.W., Atlanta, GA 30303 by Federal

Express Overnight Delivery and that a copy of the foregoing was furnished on July

30, 2015 by First Class U.S. Mail to the following:

Reginald Estell, Jr., Esquire
The Law Offices of Reginald Estell Jr.,
P.A.
505 North Liberty Street
Jacksonville, Florida 32202
restell@callrej.com
*Attorneys for Appellees*

Susan S. Erdelyi, Esquire
Megan L. Logan, Esquire
Marks Gray, P.A.
Post Office Box 447
Jacksonville, Florida 32201
sse@marksgray.com
mlogan@marksgray.com
*Attorneys for The City of Lake City*

Robert J. Slama, Esquire
The Law Offices of Robert J. Slama, P.A.
6817 Southpoint Parkway, Suite 2504
Jacksonville, FL 32216
support@robertjslama.com
*Attorney for Appellees*

In addition, I hereby certify that I electronically filed the foregoing with the

Clerk of Court by using the CM/ECF system on July 30, 2015.

/s/ Cristine M. Russell
Attorney